UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICHARD A. S.,** | Civil Action No. 20-4612 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Richard A. S., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed a response to the petition and motion (ECF No. 6), to which Petitioner has replied. (ECF Nos. 8-9). The Government thereafter filed a sur-reply. (ECF Nos. 14-15). For the following reasons, this Court will deny the petition without prejudice and will deny the motion as moot in light of the denial of Petitioner's habeas petition.

**I.  BACKGROUND**

Petitioner is a forty-three year old native and citizen of Jamaica. (ECF No. 1 at 5). Petitioner moved with his family to the United States in 1987 and thereafter became a Legal Permanent Resident of the United States. (Document 7 attached to ECF No. 6 at 5). While in this country, Petitioner was arrested numerous times and convicted of several felonies, including a conviction for aggravated assault and another conviction for possession with the intent to distribute cocaine. (*Id.*). Based on his criminal history, Petitioner was taken into immigration custody on

April 21, 2016, pursuant to the Government's mandatory detention authority under 8 U.S.C. § 1226(c). Petitioner remained in immigration detention until May 25, 2017, at which time Judge McNulty entered an order in a previous habeas matter granting Petitioner a bond hearing pursuant to the Third Circuit's decisions in *Diop v. Ice/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015). (Document 8 attached to ECF No. 6). Following a hearing before an immigration judge, Petitioner was released on $15,000 bond in June 2017. (Document 9 attached to ECF No. 6). On August 27, 2019, however, Petitioner was arrested on assault charges after a domestic violence incident in which he allegedly punched his step-daughter who was trying to end an argument between Petitioner and her step-sister.[1] (Document 2 attached to ECF No. 14). Petitioner was charged with simple assault, a charge which apparently remains pending at this time, and placed in the Morris County jail. (Documents 1-2 attached to ECF No. 14). Petitioner was thereafter taken back into immigration custody upon his release from the Morris County jail and placed in the Essex County Correctional Facility by immigration officials on August 28, 2019. (ECF No. 6 at 9). Petitioner has remained in immigration detention since that time.

---

[1] Petitioner's step-daughter told police that he grabbed her by the hair and then struck her in the face with a closed fist. (Document 2 attached to ECF No. 14 at 2). The officer who arrested Petitioner noted that there were signs of an altercation where the incident had occurred, and that Petitioner's step-daughter complained of pain and had a "visible cut to the inside of her lower lip." (*Id.*). In certifications, Petitioner and his wife claim that there was no assault and that his arrest was the result of a misunderstanding and the police officer's supposed failure to interview Petitioner, his wife, or the others who were present at the house. (Documents 2, 4 attached to ECF No. 8). There is nothing in the record from the alleged victim, however, retracting her statement to the police, nor does either certification from Petitioner or his wife explain the "visible cut" that the alleged victim suffered. The certifications therefore fail to show that Petitioner's arrest or the charges against him are not bona fide, nor do they indicate that the decision of immigration officials to revoke Petitioner's bond was anything less than a good faith response to seemingly legitimate and still pending criminal charges arising out of Petitioner's actions while released on bond.

On February 3, 2017, an immigration judge ordered Petitioner removed to Jamaica and denied his applications for relief from removal. (Document 7 attached to ECF No. 6). Petitioner appealed, but the Board of Immigration Appeals dismissed his appeal on June 22, 2017. (Document 10 attached to ECF No. 6). Petitioner then filed a petition for review with the Third Circuit, which was dismissed on motion of the Government on November 16, 2017. (Document 11 attached to ECF No. 6). Two years later, Petitioner filed a motion to reopen his removal proceedings before the BIA, but that motion was denied on February 12, 2020, as it was both untimely and improperly filed. (Document 12 attached to ECF no. 6). Petitioner thereafter filed a petition for review of that decision accompanied by a motion requesting a stay of removal pending the resolution of the petition. (Document 13 attached to ECF No. 6). Petitioner's motion for a stay was granted temporarily pursuant to the Third Circuit's standing order regarding such motions on March 9, 2020. (*Id.*). The Government thereafter filed a motion to dismiss Petitioner's petition for review of the denial of his motion to reopen on March 13, 2020. (Third Circuit Docket No. 20-1523 at ECF Nos. 8-9). Both Petitioner's motion for a stay of removal and the Government's motion to dismiss Petitioner's petition for review remain pending before a panel of the Court of Appeals at this time, and Petitioner's brief responding to the motion to dismiss is due by June 3, 2020. (Third Circuit Docket No. 20-1523 Docket Sheet).

According to reports submitted by Petitioner, his medical history includes several conditions relevant to his current claims. Specifically, Petitioner contends that he is a long-time smoker, that he had his spleen removed in 1996 which to some extent weakened his immune system, that he has had a strangulated hernia, and that on two occasions fifteen years apart he suffered from a collapsed lung accompanied by an infection. (Document 6 attached to ECF No. 8). The most recent of these lung collapse and infection issues occurred in 2014. (*Id.*). Petitioner's

expert therefore opines that he is at risk of "severe" complications were he to contract COVID-19 as a result of this medical history. (*Id.*).

According to Petitioner's medical records, upon his intake into the Essex County facility in August 2019, he underwent a medical screening, at which time he was apparently in good health. (ECF No. 9 at 48-54). Petitioner also received a chest X-Ray as part of TB screening, which showed no apparent issues or signs of infection. (*Id.* at 56). Petitioner was thereafter seen and treated for minor issues including abdominal pain and headache in September 2019. (ECF Nos. 52-60). When Petitioner's abdominal pain continued, he was given an abdominal X-Ray in October 2019 which failed to indicate any issues requiring further treatment. (*Id*. at 63). Petitioner next complained of issues on April 16, 2020, when he reported to the jail's medical department with complaints of headache, coughing, and fatigue. (*Id.* at 67-68). Petitioner's temperature was taken and he was found to have a temperature of 101.6 degrees. (*Id.* at 68). Petitioner was diagnosed with a viral infection and was given medications to help treat the infection including vitamins, acetaminophen, Zithromax, and Tamiflu. (*Id.*). Petitioner was also given a surgical mask and instructed to increase his hydration and be sure to wash thoroughly. (*Id.* at 69). Petitioner was also placed in quarantine at that time. (*Id.*). Petitioner was thereafter subjected to continued treatment and daily monitoring including temperature checks, which showed that his fever had abated by April 18 and did not return by April 28, 2020. (*Id.* at 67-72). The record contains no information regarding Petitioner's condition after April 28. Other than his brief fever, Petitioner's only other major symptom during his illness was "trouble breathing at night." (Document 2 attached to ECF No. 8). Petitioner's oxygen levels were normal, however, when tested during his illness. (*See* ECF No. 9 at 68).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

In his habeas petition and briefing in this matter, Petitioner argues that he should be released from immigration detention because he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his medical history, viral infection, and the general threat posed by the COVID-19 pandemic. As this Court recently explained, assuming the COVID-19 pandemic is a sufficiently severe circumstance that would warrant permitting a habeas claim based upon Petitioner's conditions of confinement, claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme

Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)).   Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

   . . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime.   *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020).

Turning first to Petitioner's conditions of confinement, it is clear that the Government has a strong and legitimate interest in securing aliens both during their removal proceedings and while they are in the process of being removed. *Jennings*, 138 S. Ct. at 836. That interest is especially strong where the alien in question, such as Petitioner, is subject to an administratively final order of removal fully capable of being enforced but for the temporary stay granted him pursuant to the Third Circuit's standing order. The Court further notes that Petitioner has not shown an express intent to punish on the part of jail staff. Thus, in light of the Government's legitimate interest in detaining him, he can only succeed on his conditions of confinement claim by showing that the conditions applied to him in immigration detention are arbitrary, purposeless, or excessive in relation to the Government's interest in detaining him. Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are not excessive in relation to that interest and are neither arbitrary nor purposeless.

The Essex County facility and its staff have taken numerous concrete steps to alleviate and mitigate the risk COVID-19 presents to its inmate population. Pursuant to government recommendations and guidelines for detention facilities, the jail is operating well below maximum capacity, and has reordered its dorm spaces to permit detainees to practice social distancing to the extent possible within the facility, including by spacing inmates out between bunks where possible. (Document 1 attached to ECF No. 15 at 2). Jail staff are also instructed to remind detainees to remain at a distance when they are observed in close proximity to one another. (*Id.* at 3). The jail has also instituted medical screenings and temperature checks for incoming detainees, has ensured nurses and practitioners are on site at all times and physicians are either on site or on call twenty-four hours a day. (*Id.*). Nurses are also dispatched to each housing unit twice a day to permit the reporting of medical problems in addition to normal sick call practices. (*Id.* at 4). Daily medical

monitoring and is also provided to all inmates and detainees who are classified as at high risk of complications from COVID-19. (*Id.* at 5). The jail has further begun quarantining newly arrived inmates or detainees[2] for fourteen days, as well as created quarantine areas for those who have been diagnosed with or presumed to be positive for COVID -19. (*Id.* at 8-10). Those who are asymptomatic but have been exposed to those who have the virus are also separated and kept in a separate unit for at least fourteen days.[3] (*Id.* at 13). For those inmates diagnosed or presumed to have the disease, those who are only mildly symptomatic are treated in house in quarantine, and those who have moderate to severe symptoms are transported to the hospital for treatment. (*Id.* at 12). The jail has also taken numerous preventative steps including acquiring significant supplies of masks and other protective equipment, increasing on hand supplies including cleaning supplies, ensuring the facility is cleaned and sanitized regularly multiple times per day, providing detainees with soap upon request and access to sanitizing cleansers with facility oversight when requested, and eliminating or severely limiting entrance into the facility by contractors or visitors. (*Id.* at 2-15). Considered cumulatively, these steps clearly show the Government and the jail have made considerable efforts to alleviate and mitigate the threat posed by COVID-19, and that, based on these efforts, the conditions under which Petitioner is detained are neither excessive in relation to the legitimate Government interest in detaining aliens such as Petitioner, nor are they arbitrary or

---

[2] The jail ceased taking in new ICE detainees in late March other than those shifting from state to federal custody based on immigration detainers. (*Id.* at 8).

[3] The jail has also begun using a COVID-19 antibody test to aid in determining which detainees should be placed either in quarantine or the separate cohort unit for asymptomatic detainees who have been exposed to the virus. (*See* Document 4 attached to ECF No. 14). Although this test in and of itself is insufficient to determine with absolute certainty which inmates have or have not been exposed, overcome, or recovered from COVID-19, the test can provide guidance as to which individuals may have been exposed and may have developed some level of immunity to the virus, and is thus used for aiding quarantine and cohorting determinations rather than as a pure diagnostic tool. (*Id.*).

purposeless. Petitioner's condition of confinement claim therefore fails to set out a valid basis for habeas relief.

Petitioner's deliberate indifference to medical needs claim fairs no better as a basis for habeas relief. Here, Petitioner's medical records clearly show that he was given a thorough intake screening including a chest X-ray, and that on each occasion that he sought treatment prior to the COVID-19 outbreak, he was seen immediately and provided diagnostic testing, including an X-Ray of his abdomen when he was having intestinal pain, and treatment. Likewise, when Petitioner began to exhibit symptoms of a viral respiratory symptom in April, including a moderate fever, Petitioner was seen, treated, and provided several medications. He was thereafter monitored, and his symptoms, including his fever, appear to have abated within days of the onset of his treatment. Nothing in Petitioner's records or in his certification suggest he has any untreated medical conditions, and the record instead directly indicates he was provided adequate treatment for his viral infection and was placed in quarantine for his own protection and the protection of other detainees. In light of the timely medical treatment and monitoring Petitioner received and the considerable steps the jail has taken to mitigate the threat COVID-19 presents to Petitioner and other immigration detainees, Petitioner has failed to show that jail staff have acted with deliberate indifference towards him. His medical needs claim thus fails to present an adequate basis for habeas relief. That Petitioner may disagree with the minutiae of his treatment or may wish that the Government could expressly guarantee his safety and health are immaterial, the constitution does not require perfect or miraculous levels of care and prevention – it requires only that detainees such as Petitioner not be subjected to punitive conditions and that medical staff not disregard known serious risks to his health and safety. *See, e.g., White*, 897 F.2d at 110; *V.S.*, 2020 WL 1921936 at *3; *see also Sacal-Micha;* 2020 WL 1518861 at *6. As Petitioner has failed to

show that he has either been exposed to punitive conditions or that jail staff have been deliberately indifferent to his medical needs, Petitioner's habeas petition fails to set out a valid basis for habeas relief, and his petition is therefore denied. Petitioner's motion seeking a temporary restraining order is in turn denied as moot in light of the denial of his petition.

### III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE and his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition. An appropriate order follows.

Dated: May 14, 2020

*s/Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge